**BUYERS PRODUCTS CO., Relator,**

v.

**Honorable Pat CLARK, Respondent.**

**No. 09–92–126 CV.**

Court of Appeals of Texas,
Beaumont.

Dec. 10, 1992.

Rehearing Denied Jan. 7, 1993.

Michael C. Neel, Neel, Seymore, Price & Livingston, Houston, for appellant.

Michael R. McGown, Weller, Wheelus & Green, Michael R. Ramsey, Bush, Lewis, Ramsey & Roebuck, Beaumont, for appellee.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

OPINION

WALKER, Chief Justice.

This is an original mandamus action filed by Buyers Products Co., relator, requesting this Court to mandamus the Hon. Pat Clark, Judge of the 128th Judicial District Court, Orange County, Texas, to command him to rescind orders: 1) striking supplemental discovery responses filed by relator; 2) quashing the depositions of witnesses designated by relator; and 3) rescinding his order prohibiting relator from taking depositions other than the depositions of witnesses designated by plaintiffs below, Kimberly Hunter and Kurt Hunter, and defendants in the trial court below, Bradley Ferguson and John Hoffpauir. The order of which relator complains is dated May 21, 1992. We note our jurisdiction over this matter and the parties. Tex.Gov't Code Ann. § 22.221 (Vernon 1988).

This action arises from a personal injury action which occurred on February 24, 1989, when a house moving dolly being towed by a truck came loose and struck plaintiff, Kimberly Hunter. The truck was owned by Bradley Ferguson and driven by John Hoffpauir. Buyers Products was distributor of the "pintle hook" being used to tow the dolly. Defendants also include B.J. Truck and Trailer Supply and M.K.I. Industries. Plaintiffs' petition was filed April 7, 1989.

Buyers Products Company (called Buyers) mailed supplemental responses to plaintiffs' interrogatories on March 2, 1992, which were filed by the Clerk of the Court on March 4, 1992.

Buyers obtained informal notice on March 11, 1992, of a trial setting for March 30, 1992.

On March 16, Buyers was notified of the March 30 setting by the court clerk.

On March 19, plaintiffs filed a motion to strike supplemental answers filed by Buyers. The docket sheet reflects on March 20, 1992, "Motion to Quash denied".

It is uncontroverted that at the March 20, 1992 hearing, an order was made from the bench requiring Buyers to produce an expert's report from Ron Stroup on March 23, 1992, then produce Mr. Stroup for deposition by Wednesday, March 25, 1992. The expert's report was telefaxed to the plaintiffs' attorney's office on March 23, 1992, at 8:40 p.m. On the morning of March 24, 1992, a legal assistant for plaintiffs' attorney contacted Buyers' attorney's office to determine the status of the deposition to be taken by March 25, 1992. Buyers' attorney's secretary contacted plaintiffs' attorney's legal assistant in the afternoon of March 24, 1992, to schedule the deposition of the expert in question for Friday, March 27, 1992, at 10:00 a.m. in plaintiffs' attorney's office. A letter confirming this arrangement was telefaxed to plaintiffs' attorney's office on March 25, 1992, at 10:18 a.m. Attorneys for Bradley Ferguson, individually and d/b/a B & M Enterprises and John Hoffpauir were not favored with a copy of the expert's report by Buyers' attorneys nor were they made privy to the deposition arrangements.

On March 25, co-defendants Ferguson and Hoffpauir moved to strike Buyers' use of Ron Stroup as an expert witness. At the same time, plaintiffs moved to strike Buyers' supplemental answers for the second time.

On March 27, 1992, after a hearing by the trial court, Buyers' supplemental responses of March 2, 1992, were stricken. A written order on this hearing was signed April 3, 1992.

On March 30, 1992, the day of trial, Buyers moved for continuance under Tex. R.Civ.P. 245 because it did not have 45 days notice prior to trial setting. By order dated April 3, 1992, the court granted the motion for continuance and expressly stated that prior orders striking supplemental discovery and striking use of expert witness Stroup should remain in effect.

The case was reset for June 22, 1992.

On April 6, 1992, Buyers again filed supplemental answers identifying Ken Sorenson, Tom Gries, and Joseph Wicks as additional witnesses.

On this same day, Buyers filed a notice of intention to take the deposition of Wicks on April 16, 1992, in Corpus. It was later rescheduled for May 22, 1992.

On April 23, 1992, plaintiffs filed a motion to strike the supplemental answers of April 6, 1992, which was granted by the court on May 8, 1992.

Buyers, claiming a lack of specificity in the May 8 order, intended to go forward with Wick's deposition on May 22, 1992, in Corpus Christi, Texas.

On May 21, 1992, subsequent to motions being filed, the respondent, Judge Pat Clark, granted a motion for a protective order and the court sanctioned Buyers as follows: 1) Deposition of Joseph Wicks was quashed; 2) Buyers was prohibited from filing further supplemental answers; 3) Buyers was prohibited from scheduling depositions of witnesses other than those witnesses timely designated by plaintiffs or the defendants Hoffpauir or Ferguson.

It appears that the basis for striking Buyers' supplemental responses was the violation by Buyers' attorney of the trial court's oral order to produce Mr. Ron Stroup on Wednesday, March 25, 1992, for deposition, and in failing to deliver his report to opposing counsel by 5 p.m. March 23, 1992. The order is not specific in stating the grounds for sanctions.[1] If the "letter of the order" was not violated, certainly the spirit of the trial court's order was. The report was tendered by telefax after working hours at 8:40 p.m. in the evening of March 23, 1992. Attorney for the defendants Hoffpauir and Ferguson, did not receive a copy of the report from Buyers' attorney and, instead had to retrieve one from plaintiffs' attorney. It is also to be noted that the attorney for Hoffpauir and Ferguson was never consulted regarding the time and date of the deposition of Mr. Stroup. While a motion for continuance could have resolved this problem, Buyers' attorney chose not to file such motion until the day of trial. Until that time, the trial court had to make every effort to placate the parties so as to make the case trial ready. It is unfortunate that the various strategies employed only served to heighten the frustration of the trial court which culminated on Monday morning as the trial court, faced with a jury panel ready for voir dire examination, **was ambushed** with a motion for continuance good on its face. We perceive this as "game play" with opposing counsel and the trial court.

By 1985, our Texas Supreme Court openly encouraged trial judges to use sanctions to assure compliance with the discovery process and to deter abuse thereof. *See Downer v. AquaMarine Operators, Inc.,* 701 S.W.2d 238, 242 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Trial courts were given a wide berth by the appellate courts in their use of sanctions being governed by reasonableness only, even though "death penalties" were assessed, when less punitive sanctions were available. *See generally Medical Protective Co. v. Glanz,* 721 S.W.2d 382 (Tex.App.—Corpus Christi 1986, writ ref'd); *Evans v. State Farm Mut. Auto. Ins. Co.,* 685 S.W.2d 765 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Skinner v. Grimes Iron & Metal,* 766 S.W.2d 550 (Tex.App.—Fort Worth 1989, no writ). In 1990, our Supreme Court rejected the argument that death penalty sanctions were as a matter of law unjust, unfair, and inappropriate for disobedience of a pre-trial order. *Koslow's v. Mackie,* 796 S.W.2d 700 (Tex.1990). In *Koslow's,* trial courts were again encouraged to use sanctions, citing *Vasquez v. Chemical Exchange Industries, Inc.,* 721 S.W.2d 284 (Tex.1986); *Plano Savings & Loan Ass'n v. Slavin,* 721 S.W.2d 282 (Tex. 1986); and *Medical Protective Co. v. Glanz, supra.*

---

**1.** For a discussion for the need of Findings of Fact, *see Chrysler Corporation v. Blackmon, infra,* approving of *United States Fidelity and Guar. Co. v. Rossa,* 830 S.W.2d 668, 672 (Tex. App.—Waco 1992, writ denied), and disapproving *Hartford Acc. & Indem. Co. v. Abascal,* 831 S.W.2d 559, 560 (Tex.App.—San Antonio 1992, original proceeding).

We note with interest the case of *Vaughn v. Texas Employment Comm'n,* 792 S.W.2d 139 (Tex.App.—Houston [1st Dist.] 1990, no writ) wherein the court held that even if a party's wrongful discovery responses became immaterial at a later date, they were nevertheless liable for sanctions if they offended the discovery process at the time they were given. This we think answers relator's argument in the present case that the continuance and rescheduling of trial rendered all prior proceedings moot.

In 1991, the pendulum began its backswing. In *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913 (Tex.1991) our Supreme Court recognized that choice of sanctions is within the sound discretion of the trial court including death penalties for abuse of discovery but added that the sanctions must be "just" and they may not deprive a party of constitutional due process. The Court set standards for review of whether the lower court imposed just sanctions. *See also Pedraza v. Peters,* 826 S.W.2d 741, 743 (Tex.App.—Houston [14th Dist.] 1992, n.w.h.). First, there must be a direct relationship between the offending conduct and the sanction imposed. The sanction must be directed against the abuse and toward remedying the prejudice to the innocent party. It also means that the sanction must be visited on the offender whether it is the party or his counsel, i.e., the party should not be punished for counsel's conduct. Secondly, just sanctions must not be excessive and no more severe than necessary to satisfy its legitimate purposes.

■ *Chrysler Corporation v. Blackmon,* 841 S.W.2d 844 (Tex.1992) restates the *TransAmerican* standards and adds that the trial court must consider relatively less stringent sanctions than imposing the death penalty to promote compliance, deterrence, and discourage further abuse. *See also Rossa,* 830 S.W.2d at 671. Since *Chrysler,* we now apply the following four step standard of measurement: (1) there must be a direct relationship between the conduct and the sanction; (2) the sanction cannot be more severe than necessary to

satisfy the legitimate purposes of sanctions; (3) lesser sanctions must be examined for possible imposition; and (4) death penalty sanctions should not be used to deny a trial on the merits unless we find that the sanctioned party's conduct justifies a presumption that its claims or defenses lack merit and that it would be unjust to permit the party to present the substance of that position before the Court. *Also see TransAmerican,* 811 S.W.2d at 918; *Braden v. Downey,* 811 S.W.2d 922, 929 (Tex.1991).

Obviously, these recent cases will encourage trial judges to take due process precaution before entering sanctions against parties who may be unaware of their attorney's conduct. In reality, most sanction hearings are held without attendance of the clients who may suffer the result of a court ordered sanction. There are those situations which may create adversarial relationships between attorneys and their clients, thus bringing about questions of legal malpractice. Have we reached that time where trial judges should warn clients of the possible conflicts of interest and the possible need for additional representation if only at the sanction hearing?

■ In adhering to Supreme Court guidelines we examine the sanction to determine if there is a direct relationship between the conduct and the sanctions. In the case before us, we cannot say that the party, Buyers Products, was at fault which requires us to conditionally grant the writ of mandamus. After examining the record before us, it is apparent that the offending party is the attorney for relator and not the client, Buyers Products. If this offense was not directly brought before this Court as a specific ground for relief, it is understandable because it would have required Buyers' attorney to admit being that offending party. Regrettably, attorneys and clients may become adversaries but as attorneys, we must continually bear in mind our oath, duty and obligations to our client. Too may times "lawyering" jeopardizes the interest of those we have been paid to protect.

We hold that relator, Buyers Products Co., is entitled to the mandamus relief it seeks. We are confident that Judge Clark will vacate his order of May 21, 1992, after which he may conduct further proceedings consistent with this opinion. Our writ of mandamus will issue only in the event that he fails to comply.

WRIT OF MANDAMUS CONDITIONALLY GRANTED.

BROOKSHIRE, Justice, concurring.

The orders of which the Relator complains and challenges are certain orders of the district court dated May 21, 1992. This May 21st hearing was crucial.

The case had been set for a trial setting for the date of March 30, 1992. But it is clear that the Relator (hereinafter "Buyers") had not received adequate and proper notice of the trial setting. On March 20, 1992, an order was rendered from the bench requiring Buyers to disclose an expert's report not later than March 23, 1992. This expert was identified as Ron Stroup. Stroup was to be deposed by March 25, 1992. The expert report was telefaxed on the date designated but after ordinary office hours.

A further delay was brought about when the secretary of Buyers' attorney contacted a legal assistant with the plaintiff's attorney's office fairly late in the afternoon of March 24, 1992, to schedule the deposition of the expert, Stroup, for March 27, rather than on March 25. Buyers' attorney insisted he was in trial in Leon County. A letter confirmed this new date of March 27. Pursuant to these events plaintiffs below moved to disallow Buyers' expert, Stroup. A first critical hearing was held before the trial court on March 27, 1992. Buyers' supplemental responses were stricken and Stroup could not give evidence. Stroup was in attendance in court on March 27 and was tendered for deposition. This offer was declined.

The special trial setting was still set for March 30. Buyers successfully moved for a continuance pursuant to TEX.R.CIV.P. 245 because Buyers had simply not been given the necessary notice. The continuance was not really challenged. An order was entered dated April 3, 1992. The trial court granted the motion for continuance (which was tacitly conceded to be good) but in the same order declared that prior orders striking supplemental discovery and disallowing the use of the expert would remain in effect. The case was at that point not set for trial.

Buyers attempted timely to file supplemental answers. Buyers designated three additional witnesses. Buyers scheduled a deposition of one Joseph Wicks for May 22. However, on May 21, pursuant to sanction motions filed by the plaintiffs, the court entered a protective order. Buyers was three or four hours late filing the expert report of Stroup. Buyers rescheduled Stroup's oral deposition by one day. Buyers contended that Stroup was unavailable and could not be contacted to obtain his report. These delays could have been plausible. The record fails to disprove them; but these delays could have been "gamesmanship." The record does not show repeated incidents of *not* following the court's discovery orders. No flagrant, prolonged bad faith is shown against Buyers. The Respondent levelled sanction against Buyers. The sanction included (1) that the Joseph Wicks deposition was quashed; (2) that Buyers was prohibited from filing any further supplemental answers; (3) that Buyers was prohibited from scheduling deposition of any witnesses other than the witnesses timely designated *by the plaintiffs or by certain other defendants* Hoffpauir or Ferguson. It should be noted that an earlier filed motion for continuance could have alleviated many of the problems involved.

Again, it should be noted that the contested expert for Buyers was present and in attendance on court before the trial on the merits was to begin and could have been deposed. If that first deposition was not adequate the trial court could certainly, within its prerogatives, have ordered a second taking of the expert's deposition.

This concurrence would point out that in the discovery process and procedure, some modicum of cooperation among counsel

should be encouraged in order that the discovery process can be adequately and promptly conducted and concluded. For example, in this appeal, if there had been some reasonable effort made towards joint discovery, it seemed logically correct to presume that this litigation could have been tried on its merits by this date.

The underlying philosophy of the discovery procedure is to make available to the factfinder complete, indepth merits of the litigation. This philosophy serves justice and facilitates fair, prompt settlements. Of course, the appropriate sanctions can be invoked when a party-litigant acts in flagrant bad faith or an attorney demonstrates callous disregard for the responsibility imposed upon him or her under the discovery rules.

*Chrysler Corporation v. Blackmon*, 841 S.W.2d 844 (Tex.1992) sets out in order four measures or standards to be used to test the validity of sanction orders. In *Chrysler Corporation*, the Court reasoned that the sanction imposed must be directed against the abuse shown. Further, that any sanction imposed must be only as severe as is necessary to satisfy the legitimate reasons for sanctions in the discovery process. Therefore, it follows that a lesser sanction is to be first imposed such as a fine or monetary penalty. This penalty may be substantial.

This concurrer thinks that it is important to state that a consensus exists on the Court that by the conditional granting of this writ of mandamus that the rules governing discovery are rejuvenated as are the rules concerning the setting of cases and the notification of the settings. Thus a fresh start in discovery takes place.

This writer also thinks that it would be salutary for our Court of Appeals to share our jurisdiction with the district court. This sharing would permit the district court to proceed in an orderly fashion to complete the discovery process as well as to impose sanctions. Once the discovery process had been reasonably concluded, perhaps the litigation could have been settled in a fair and equitable manner as to all parties-litigant. The settlement of litigation has been declared to be one of the very legitimate purposes of a full, fair and adequate discovery proceeding. But in any event, such a sharing with the trial court would, it is submitted, resolve the matters in contest in this intermediate appellate level rather than the matter being attempted to be taken to the Supreme Court of Texas. Indeed, the discovery could have proceeded while the petition for a writ of mandamus was being considered.

It must be stressed that in *TransAmerican Natural Gas v. Powell*, 811 S.W.2d 913 (Tex.1991) the Court wrote at 917:

> The *trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both.* This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. *On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation. The point is, the sanctions the trial court imposes must relate directly to the abuse found.* (emphasis added)

The dissent failed to include the important concluding sentence of the above paragraph being: *"The point is, the sanctions the trial court imposes must relate directly to the abuse found."* This mandate certainly justifies a reasonable attempt on the part of the district court (assisted by counsel) to ascertain whether the offensive conduct violative of the discovery procedure is properly attributable to the counsel for Buyers only or to Buyers only or perhaps to both. It is submitted that from the record before us as well as the interesting and enlightening arguments delivered at oral submission that this determination may well be pursued by the trial court. The arguments at oral submission did not challenge the fact that the attorney of record for Buyers during the early part of this

litigation has been severed in some manner from the law firm with whom he was previously associated.

The real parties at interest affirmatively concede that the primary purpose of discovery is to prevent trial by ambush and that necessarily the truth may be found and disclosed for the benefit of the fact-finders. Therefore, the paramount policy underlying discovery and discovery rules is to make the adversary process a better and more efficient instrument for arriving at the truth.

The Relator brought this petition for mandamus action based upon the Respondent's order which (1) quashed the deposition of the defendant's expert, Joseph F. Wicks; (2) prohibited filing any further supplemental responses or answers to discovery or to name additional fact or expert witnesses; and (3) prohibited the scheduling of depositions of witnesses other than those timely designated by the plaintiffs or the co-defendants, the co-defendants being Bradley Ferguson, et al. In practical effect, Buyers case could not be developed. It could not be presented to the jury.

It should be emphasized that the Relator had originally been ordered to produce the expert report of Ron Stroup on March 23, 1992, and then to make Mr. Stroup available for a deposition on March 25, 1992. *Note that there was only a two-day interval* between the examination of the expert report and the actual taking of the deposition of Stroup. It is correct that the Relator failed to abide by these orders of the district court and it was certainly evidence of "gamesmanship" which was calculated to frustrate the district court in the discovery process. Stroup was in court ready for deposition on March 27. Plaintiff had his report on March 23 although three or four hours late. It seems evident that the trial judge felt that the period of time from March 23rd to March 25th would be adequate to review the expert's report and to be ready to depose the expert Ron Stroup.

There was yet another hearing on March 27, 1992. A hearing was held at the request of the Hunters and an order was entered striking the use of the Relator's expert witness Stroup, although the plaintiffs had more notice than they had originally.

There is also in the record a reflection that two of the attorneys for Buyers had been in trial in Harris County and Leon County, respectively, and, therefore, it became necessary for some of the personnel in the office of the counsel for the Relator to communicate with the other attorneys by telefax. In addition there is some reasonable indication in the record that the proffered expert, Ron Stroup, was out of town and could not be located to complete, bring forward and deliver timely his expert report by the close of business on March 23rd. But the record indicates clearly that Ron Stroup was available and in attendance on court and in attendance on the attorneys involved on March 27, 1992, and his deposition could have been taken at that time. The record reflects also that an offer was made to the effect that Stroup would discuss the case fully with the counsel for plaintiffs and still Stroup would be provided for formal deposition on Friday, March 27th.

After these proceedings before the district court, it was only as of March 30, 1992, that the motion for continuance in behalf of Buyers was hand delivered to the other counsel. Although this was another frustration, obviously, to the Respondent, there seems to be no contest to the fact that the Relator simply did not receive the notice of the trial setting to which it was entitled pursuant to TEX.R.CIV.P. 245. In fact, by order entered April 3, 1992, the district court found that Buyers' motion for continuance should be granted because Buyers did not have notice of the trial setting as required by Rule 245.

It is significant to note that even after the case was formally continued that on a number of occasions attempts were made to take oral depositions as well as video tape depositions. Also attempts were made to supplement answers to interrogatories. All of these discovery procedures were disallowed. It seems a fair and balanced statement to relate that a good deal

of "gamesmanship" was engaged in—both ways.

Ultimately, it was ordered that the Relator would be prohibited from filing any further supplemental responses or answers to discovery or to name fact or expert witnesses and that the Relator would be prohibited from scheduling any deposition of any witnesses other than those witnesses that had been designated by the plaintiffs in the case or by the defendants Hoffpauir and Ferguson. The last sanction motion was granted in full, even though the motion for continuance had been granted and the case was not set or later set more than 30 days in the future. The Relator ordinarily would have a right to supplement discovery procedures up until 30 days before the trial setting.

The record also clearly shows that the original attorney for Relators, Honorable Mark D. Wilson, was no longer the attorney of record in this litigation nor was he associated with the law firm representing the Relator. The Relator is now represented by Honorable Michael C. Neel and Honorable Laddie Livingston. Relator took the position that the discovery matters that were attempted shortly after March 30th were very timely done.

A full transcription of a hearing held in the district court of Orange County on May 21, 1992, is before us. This May 21 hearing was and is of paramount importance. Again, the matter was argued concerning the motion to quash the deposition of Joseph F. Wicks. Mr. Wicks had been listed in a supplemental discovery pleading. Counsel for the Hunters stated:

[A]nd we are asking the court to specifically quash the deposition. *And so that we don't have to come back to the court,* I'm making it clear in the order that the prior conduct of the defendant has resulted in the sanctions that the court has heretofore imposed, *those sanctions being that the defendant will not have any witnesses testify at the trial of this case,* which is scheduled for June 22, of 1992. I wish to specifically set out in here the relief that is being sought, and the order specifically states that the re-

lief that is being sought is that the deposition be quashed, that they not notice any more depositions, and not designate any further witnesses in the case. (emphasis added)

This sanction was granted as demanded. A new counselor for the Relator pointed out that what the plaintiffs were then asking at the May 21st hearing was to inflict upon Buyers the "civil death penalty". Buyers' pleadings were not stricken; no default judgment was entered against Buyers, so the "ultimate" death sentence was not fully imposed. But Buyers was "dead in the water" with no realistic defense. In view of the recent cases, such as *Trans-American Natural Gas, supra,* and *Chrysler Corporation, supra,* I feel constrained to agree with the Court's opinion, because for practical purposes, upon the explicit motion and orally argued request of counsel for Hunters, the Relator was visited with the "civil death penalty" and could not make a viable defense and the truth, subject to the findings of the jury from the standpoint of one party simply could not be developed and offered in evidence.

Sanctions are not to be imposed in such a manner that effective appellate review is thwarted or seriously diminished. Whenever a trial court mandates sanctions which have the practical effect of adjudicating litigation then eventual remedy of an appeal is inadequate. Striking pleadings of a party, dismissal of a cause of action, rendering an interlocutory default judgment (which was not an appealable judgment) are examples of vitiating the adequacy of an appeal. *See Braden v. Downey,* 811 S.W.2d 922 (Tex.1991); *TransAmerican Natural Gas, supra.*

Here Buyers can take no depositions nor present witnesses; it cannot present a defense—hence, the remedy of an appeal is not adequate. No record—no statement of facts could be developed to show to an appellate court Buyers' positions or defenses. Buyers would be obliged to suffer a trial limited for the most part to the damages claimed by the Hunters. Nor could Buyers defend against any liability issue

against it. *Id.* Buyers cannot defend itself against the contentions of the other defendants.

The trial proceedings of the case are distorted because Buyers cannot present the merits of its case. *Id.* Perhaps the "civil death penalty" has not been pronounced on Buyers; but the death penalty is approached. Buyers as to its case is in prison for life without parole. Relator, Buyers, has no adequate remedy at law; mandamus lies.

In *Braden, supra,* the Court held that in the event the trial court elects to impose a substantial monetary sanction and unless the trial court delays payment thereof until the entry of a final judgment, the court should make express written findings, after a prompt hearing, clearly articulating the reasons why the monetary sanction does not impede a resolution of the case on the merits. The trial court is to exercise its discretion in a reasonable and principled manner.[1]

BURGESS, Justice, dissenting.

I respectfully dissent. The majority states: "we cannot say that the party, Buyers Products, was at fault which requires us to conditionally grant the writ of mandamus. After examining the record before us, it is apparent that the offending party is the attorney for relator and not the client, Buyers Products." In other words, the trial court could have sanctioned the attorney, but not the client. However, the supreme court visited this issue in *Trans-American Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex.1991) when it stated:

> The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. This we recognize will not be an easy matter in many instances. On the one hand, a lawyer cannot shield his client from sanctions; a party must bear some responsibility for its counsel's discovery abuses when it is or should be aware of counsel's conduct and the violation of discovery rules. On the other hand, a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation.

In its petition for mandamus, Buyers Products does not point out how the trial judge failed to determine whether the offensive conduct was attributable to counsel only. Never once did relator's counsel remotely point out to the trial judge that Buyers Products bore no responsibility. They certainly presented no evidence. It is relator's burden to show an abuse of dis-

---

1. In addition to the standards for review (on the question of whether the lower court imposed just and proper sanctions as set out in *Trans-American Natural Gas Corp., supra*) are those standards that are emphasized in *Chrysler Corporation, supra.* In *Chrysler,* the Court set out four standards. *First,* there is to be a direct relationship between the offensive conduct and the sanction imposed; *second,* usually striking pleadings and rendering a default judgment on liability is more severe than necessary to satisfy the legitimate purposes of sanctions for discovery abuse; *third,* lesser sanctions are to be imposed before the more severe sanctions are used; *fourth,* very significantly death penalty sanctions should not be put in place to deny a trial on the merits unless and until the trial court finds that the sanctioned party's conduct mandates a conclusion that its claims, contentions or defenses lack merit.

Here the contentions and defenses of Buyers have not been developed.

The Court's opinion and this concurrence in effect overrule *City of Port Arthur v. Sanderson,* 810 S.W.2d 476 (Tex.App.—Beaumont 1991, orig. proceeding) and *Southwestern Bell Telephone v. Sanderson,* 810 S.W.2d 485 (Tex.App.—Beaumont 1991, orig. proceeding). The Court's opinion in the *City of Port Arthur* held in substance that a trial court's pre-trial order granting a motion to strike designation of expert witnesses was not subject to mandamus relief. Justice Burgess wrote in *City of Port Arthur* at 477:

> The courts of appeal are divided on this issue. *Forscan Corp. v. Touchy,* 743 S.W.2d 722, 724 (Tex.App.—Houston [14th Dist.] 1987, orig. proceeding) held that the exclusion of two experts were not reviewable by mandamus because the right to offer the evidence by bill of exception is an adequate remedy at law. *A very recent case, Humana Hospital Corp. v. Casseb,* 809 S.W.2d 543 (Tex.App.—San Antonio, 1991, orig. proceeding) held a pre-trial exclusion order was not subject to mandamus. *We believe the latter two cases to be the better rule. (emphasis added)*

cretion. They failed. *See Walker v. Packer,* 827 S.W.2d 833 (Tex.1992). The petition should be denied.

The concurrence, in footnote 1, claims the original opinion and the concurrence overrule *City of Port Arthur v. Sanderson,* 810 S.W.2d 476 (Tex.App.—Beaumont 1991, orig. proceeding) and *Southwestern Bell Telephone v. Sanderson,* 810 S.W.2d 485 (Tex.App.—Beaumont 1991, orig. proceeding). This claim is misplaced for two reasons. First, no where in the Chief Justice's opinion does he so state. Second, the cases are not similar. *City of Port Arthur* and *Southwestern Bell Telephone* were neither "death penalty" sanction nor "death penalty" discovery cases, they were pre-trial witness exclusion cases. These are quite different. Contrary to the concurrence, *City of Port Arthur* and *Southwestern Bell Telephone* were good law when they were handed down and are good law now!