**FORSCAN CORPORATION, et al., Relator,**

v.

**Hon. Hugo A. TOUCHY, Judge, 129th District Court, Respondent.**

No. B14–87–641–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 17, 1987.

David D. Peden, David L. Moseley, Gary L. Bush, Houston, for relator.

Rodney K. Caldwell, Patricia N. Brantley, Houston, for respondent.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

In this mandamus proceeding, relators Forscan Corporation and Piero Wolk request that the court of appeals direct the Honorable Hugo A. Touchy, Judge of the 129th District Court of Harris County:

(1) to allow relators to call at trial two expert witnesses designated after the court imposed deadline for discovery;

(2) to allow relators to depose two witnesses designated by plaintiff Dresser Industries, Inc., immediately before the discovery deadline set by the court;

(3) to allow relators to discover the in-house prosecution files of Dresser and to depose the creator of any document in those files, and

(4) to allow relators to use at trial the testimony given by opposing counsel at a pre-trial hearing.

We deny the petition for writ of mandamus with respect to all requests.

During the years 1967 through 1976, relator Piero Wolk worked for Dresser Industries, Inc., the real party in interest, as both an employee and as a consultant. After his association with Dresser ended, Mr. Wolk sought to develop and market a well logging tool to be used in petroleum exploration. He incorporated a small business, Forscan Corporation, for this purpose in 1979. In July 1981, independent counsel for Dresser, Arlon Groves of Bard, Groves, Sroufe, Ryerson & Jackson, contacted Mr. Wolk expressing the concern of Dresser that Forscan's tools may have incorporated proprietary information or trade secrets of Dresser to which Mr. Wolk had had access as Dresser's employee. Mr. Wolk's written reply invited Dresser to buy one of Forscan's compensated density tools, stating "we are not concerned about 'contamination' since we are in an open market. Personally, I would be delighted if Dresser gains any engineering benefit from our design." Despite this statement, Mr. Wolk insisted that Dresser sign a disclosure agreement stating that design and operational information on the logging tool would be kept confidential and used "for evaluation purposes" and would not be appropriated for its own use or benefit. Such an agreement was signed and the tool, its component parts, and its drawings were inspected.

As a result of the inspection, Dresser concluded that Forscan's well logging tool incorporated technical information belonging to Dresser. Shortly thereafter Dresser filed suit to enjoin Forscan and Mr. Wolk from making and selling the logging tool, alleging a misappropriation and misuse of trade secrets and confidential information, unfair competition and breach of an employment agreement (executed in 1971) and a consultant agreement (executed in 1975). Mr. Wolk and Forscan counter-claimed that Dresser was engaging in unfair competition, was abusing civil process, was misappropriating Forscan's trade secrets and confidential information, and was committing fraud on the court. The trial court granted a temporary injunction to the extent of requiring that Forscan give notice to buyers that the equipment was subject to pending litigation. Attempting to broaden the injunction, Dresser appealed, but it failed to bring the entire record before the appellate court. Although this court noted that the record showed that Mr. Wolk had worked in logging operations at Dresser and had had access to the information, we affirmed the limited injunction on the basis that where only a partial statement of facts is submitted, the appellate court must presume that the evidence omitted supports the judgment of the trial court. *Dresser*

*Industries, Inc. v. Forscan Corp.*, 641 S.W.2d 311 (Tex.App.—Houston [14th Dist.] 1982, no writ).

In March 1982, six months after filing suit against Mr. Wolk and Forscan, Dresser applied for a patent on a well logging apparatus. The patent was granted on February 21, 1984.

The suit lay virtually dormant until May 1986 when a motion by relators to retain the case on the court's docket was granted. At that hearing the court issued an oral instruction that all discovery was to be completed by August 18, 1986, and the case would be certified for trial at that time. Although no order to that effect was signed by the court, the court's ruling was noted on the trial docket sheet: "[A]ll discovery to be completed by 8/18/86." At the request of relators on August 4th, the trial court extended the discovery deadline until September 1st, again signing only a docket notation: "Discovery extended to 9–1–86 when case will be certified." No further requests for extension of the discovery period were made prior to September 1st.

Dresser designated one expert witness well before the discovery cut-off, a second on August 25th, a third on August 29th, and two additional experts after September 1st. Relators designated their only two experts (other than Mr. Wolk, the co-defendant) after the deadline. Dresser moved to have the court strike all witnesses of all parties designated after the deadline, including its own experts. The motion was granted and noted on the docket.

Even though the discovery termination date was never embodied in a formal order, the action of the trial court in striking the witnesses named after September 1, 1986, makes clear the court's intent to enforce the discovery cut-off as to designation of expert witnesses. There is no dispute that the result was to leave Dresser with three expert witnesses and relators with none except for the interested party Mr. Wolk. Relators contend that it is "an abuse of discretion to create such an imbalance." By their first request relators ask that this court direct Judge Hugo Touchy to vacate or modify the ruling recorded in his docket entry of August 4th and allow them to call at trial two expert witnesses designated after the court deadline. We refuse.

Mandamus will issue only to correct trial court actions when there has been a clear abuse of discretion or the violation of a duty imposed by law and when relator has no adequate remedy on appeal. *Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex. 1987); *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). Relators' petition fails to meet this standard.

A trial court acts within its discretion in setting a deadline for the naming of expert witnesses. *Werner v. Miller*, 579 S.W.2d 455, 456 (Tex.1979). This rule is especially applicable in a case that has languished, unprosecuted, on the docket for five years. The fact that the case was not set for trial as quickly as the trial judge anticipated is irrelevant. It is also irrelevant that the effect of the ruling is harsher on one party than the other. Both had equal opportunity to comply with the deadline. The imbalance was not the creation of the trial court. The assumption of relators that discovery would remain open until a certification order was signed was unjustified in light of the deadline issued by the trial court and the docket entry. Relators obviously took the deadline seriously when they requested its extension from August 18th to September 1st. When difficulties developed in reaching a firm decision on experts, relators made no effort to request a further extension from the trial court. We find no abuse of discretion in the setting and enforcement of the discovery deadline with respect to the designation of witnesses.

Furthermore, relators have failed to show they have no adequate remedy on appeal. The evidence that will be excluded by the trial court is still available to them and may be presented for appellate review by bill of exception.

As an alternative reason for issuing a writ of mandamus, relators argue that in striking the witnesses designated after September 1, 1986, the trial court violated Rule

11 of the Texas Rules of Civil Procedure. Rule 11 establishes a minimum standard for invoking the assistance of the trial court in enforcing an agreement between parties to a law suit:

No agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record.

Tex.R.Civ.P. 11.

On September 3, 1986, counsel for Dresser filed a letter with the court. The letter, dated September 2, 1986, was addressed to relators' attorneys:

In our telephone conversation [of August 28, 1986], I advised you that I could not agree to any extension of the September 1, 1986, discovery cutoff date without conferring with my client, whose in-house counsel would not be available until at least September 2, 1986. I stated that, if you would set forth your proposal in writing ..., I would discuss the matter with my client and let you know what, if anything, we were willing to agree to.

We have worked diligently toward completing our discovery prior to September 1. The only items outstanding are our inspection and testing of the Forscan tool, which we agreed to reschedule to September 5, 1986, at your request; the deposition of your technical and economics experts, whoever they may be, the existence of whom (without identification) was first disclosed to us on August 28, 1986; and responses to discovery requests previously served.

We will consider whatever proposal you may wish to make and will advise you of our position promptly after we receive your proposal.

Relators argument seems to be that (i) this letter constituted an agreement that Dresser would allow relators to designate experts after September 1, 1986, and (ii) the trial court is obligated under Rule 11 to enforce any written agreement between parties or their attorneys that has been signed and filed with the trial court. We disagree with both conclusions.

The letter is an emphatic denial of any agreement to extend the deadline. It indicates reluctance to consent because "[w]e have worked diligently toward completing our discovery before September 1." The only promise is a guarded statement by Dresser's attorney that if relators will submit a written proposal to extend the deadline, it will be considered. A subsequent letter from Dresser's counsel, dated September 17, indicates the proposal was made, considered, and rejected by Dresser:

I cannot agree that ... additional experts may be designated without leave of court. If Judge Touchy should allow defendants to designate one or more experts even though the trial certification date has passed, we would consider a proposal ... that time be set aside for depositions of the designated experts. We cannot, however, unilaterally agree to extend the time for defendants' discovery.

It is difficult to find in the text of these letters the meeting of minds urged by relators. Judge Touchy could easily have concluded that no agreement existed.

Finally, even if there were such an agreement, signed by the parties and filed with the court, we see no procedural rule offended by the court's refusal to enforce it. Relators cite no authority for the proposition that a trial court is obligated to enforce all such agreements, even those directly countermanding express rulings of the trial court. We find no violation of Rule 11 in Judge Touchy's conduct.

Relators' first request for writ of mandamus is denied.

We next consider relators' second request, *i.e.*, that we direct respondent to allow relator to depose those expert witnesses designated by Dresser immediately before the deadline. The record before us is insufficient to show that the trial court will bar their deposition.

 As evidence that the trial court will prohibit all further depositions, relators quote Judge Touchy's remarks delivered at

the hearing on the motion to strike on March 30, 1987:

> THE COURT: I want to make it plain to y'all, I am not going to decertify this case. That's denied. I am striking all designations on both sides. How can you designate witnesses after September 1st if you can't take depositions after September 1st? That is the same as *cela va sans dire*. It goes without saying. If you can't take depositions after September 1st, '86, you can't designate witnesses.

This explicit statement would indicate that absolutely no further depositions will be allowed. However, the trial court may have subsequently reconsidered and amended its ruling. The affidavit of Rodney K. Caldwell, attorney for Dresser, states that at a hearing on May 4, 1987, "Judge Touchy told Relators' attorneys that he would probably allow the depositions if the parties could not agree and Relators made a motion." Relators have no recollection of such a statement.

Rule 121 of our Texas Rules of Appellate Procedure requires that the petition for mandamus "shall be accompanied by a certified or sworn copy of the order complained of. . . ." The wisdom of such a procedural rule is vividly illustrated by the record before us. The bare docket notation terminating discovery is bereft of details. Because it lacks the specificity inherent in a formal written order, a docket notation can require subsequent definition or interpretation. Oral amendment can be encumbered by the selective memory of advocates. Relators ask that we order the trial court to rescind a ruling which has never been expressed as a formal order and has possibly been amended.

Relators have never noticed the depositions of the experts designated by Dresser. They have instead waited eleven months, until twelve days before trial, to seek mandamus asking that this court compel the trial court to allow them to exercise a right relators have never requested. Certainly it would be fundamentally unfair to prohibit the deposition of those expert witnesses named so late in the discovery period that the opposing party had no knowledge of their designation until after the deadline. Our reading of the affidavit of Rodney K. Caldwell, in combination with our knowledge of Judge Touchy's reputation for intrinsic fairness, leads us to conclude that he will allow the deposition of the expert witnesses designated on August 25 and 29, 1986. We do not mandamus him to do so.

Relators' third request consists of two parts: they ask that the court be directed to allow them to discover the in-house prosecution files of Dresser concerning its patent on the well logging apparatus, U.S. Patent 4,432,143, and to allow them to depose any individual who created a relevant document in those in-house prosecution files. Dresser's patent, they contend, describes certain technical features of the Forscan well logging tool. Specifically, claim 7 of Dresser's patent incorporates a pressure balanced motor and drive screw mounted in a housing space filled with a hydraulic fluid. By their counter-claim, relators have asserted that such information was proprietary to Forscan and was acquired by Dresser during discovery. Relators timely requested Dresser to produce the prosecution file, including any invention disclosure documents upon which the patent was based. The files are relevant, they argue, to show the date and origin of the technical subject matter described in the patent.

Dresser objected to production of the file on grounds of relevancy and privilege. As to relevance, Dresser argued that no trade secrets can be claimed by Forscan with respect to its well logging apparatus because Mr. Wolk admitted in deposition that six months before the Dresser–Forscan disclosure agreement was signed, he had permitted Dresser's engineers to inspect the tool. Dresser further pointed out that claim 7 of Dresser's patent, which incorporated the pressure balanced motor, was a dependent claim not in and of itself patentable. Attached as exhibits to Dresser's response were at least three prior patents, dating back as early as 1959, that incorporated the pressure balanced motor. The patent prosecution file, Dresser explained,

would thus be irrelevant to show the date and origin of information on the pressure balanced motor, information that was public long before this suit was initiated and which could not be a "trade secret" of Forscan.

With respect to privilege, Dresser argued that to the extent that the file was not publicly available from the U.S. Patent and Trademark Office, its contents were protected from disclosure by the attorney-client privilege. Tex.R.Evid. 503(b); Tex.R. Civ.P. 166b(3)(e). At the hearing on the motion, each party presented case law on the question whether the attorney-client privilege encompasses technical information from the inventor to his attorney.[1] Both parties recognize that if the evidence were determined to be relevant to relators' claim of fraud, the shield of the attorney-client privilege could be pierced. Tex.R. Evid. 503(d)(1).

■ Once again the record includes no formal order from the court stating the basis of this decision to deny the motion. There is only the docket notation that relators' motion to compel was denied on November 13, 1986. Dresser attached to its opposition to relators' petition a statement of facts from the November 10 hearing on the motion. Relators provided a partial statement of facts from a November 17 hearing, during which Judge Touchy announced his ruling on the motion:

> Court: Thursday is when I reviewed the file and made the decision. Isn't that what I told you all I was going to do.
>
> Attorney for Dresser: Your honor, it was my understanding you were going to review the file *in camera* and make your decision *in camera.*

Court: That's what I did on Thursday.

. . . . .

I've reviewed everything, and I decided it was client-type stuff.

. . . . .

Attorney for Forscan: Then it is specific the Court did not deny our motion based on the fact that it was a file available from the United States Patent Office.

Court: No. It was the fact that we took in everything. That's why I do that in there where I had plenty of time to sit down and read over the whole file and make my decision there. Now you are asking me out here to tell you all my reasoning. I really can't tell you all my reasons.

■ Mandamus actions require certainty as to both pleadings and facts. *Johnson v. Hughes,* 663 S.W.2d 11 (Tex. App.—Houston [1st Dist.] 1983, no writ). The record filed in this case is not sufficient for this court to review the actions of the trial court. Although relators claim that the trial court never conducted an *in camera* inspection of the prosecution file, the record shows that such was requested by Dresser, setting forth its arguments for nonproduction as required by *Peeples v. Honorable Fourth Supreme Judicial District,* 701 S.W.2d 635 (Tex.1985). Judge Touchy's statements quoted above would indicate that he did review the file *in camera* and found in it no evidence relevant to claims or defenses in the lawsuit. It is equally plausible that Judge Touchy accepted the position of Dresser that the alleged "trade secrets" of Forscan were public information and, without inspection, concluded that the patent prosecution files would be irrelevant. We do not reach the merits of the arguments as to relevance presented

1. Relators argued that such information submitted to patent counsel cannot be a confidential communication because a patent attorney has a duty of candor set forth in 37 C.F.R. § 1.56(a) to disclose all material information to the patent office. *Jack Winter, Inc. v. Koratron Co.,* 50 F.R.D. 225 (N.D.Cal.1970). Dresser argued that the patent attorney is not a mere conduit for technical information, passing to the patent office, verbatim, each communication from his client; the contents of the prose-

cution file (other than that publicly available from the patent office) are protected from discovery because they were intended to be a confidential communications between an inventor and his patent counsel for the purpose of securing legal advice and assistance. *Knogo Corp. v. United States,* 213 U.S.P.Q. 936, 940–41 (Ct.Cl.Tr. Div.1980); *FMC Corp. v. Old Dominion Brush Co.,* 229 U.S.P.Q. 150, 151 (W.D.Mo.1985) [Available on WESTLAW, 1985 WL 5983].

by Dresser. To do so would require us to consider disputed questions of fact. An appellate court may not deal with disputed fact issues in a mandamus proceeding. *West v. Solito*, 563 S.W.2d 240, 245 (Tex. 1978). In the absence of a record of the basis for the trial court's decision, we must assume that Judge Touchy made all necessary findings to support that ruling. We therefore deny the writ of mandamus with respect to compelling the production of the prosecution file of U.S. Patent No. 4,432,143 and to allowing the deposition of any creator of relevant documents in that file.

In its fourth and final request for mandamus, relators ask that we direct the trial court to allow relators to use at trial the testimony given at a pretrial hearing by Mr. Raman, one of the attorneys for Dresser.

During the early months of this suit, counsel of record for Dresser was Mr. Arlon Groves of Bard, Groves, Sroufe, Ryerson & Jackson. For other patent matters, Dresser employed the firm of Arnold, White & Durkee ("AWD"). In the fall of 1981, both Mr. David Mosely and Mr. William D. Raman were associates for AWD, working on patent infringement cases for Dresser. Although not counsel of record, Mr. Raman worked with Mr. Groves on the case, attended the deposition of Mr. Wolk in the fall of 1981, and discussed the case with other AWD attorneys as well as Dresser's in-house patent counsel. In 1985 Mr. Mosely left AWD and now is a named partner in the firm of Dodge, Bush & Mosely. In 1986 Mr. Mosely became counsel of record for relators, Mr. Wolk and Forscan, and Mr. Rodney Caldwell, a partner in AWD, became counsel of record for Dresser. Dresser moved to have Mr. Mosely disqualified, contending that while he was employed by AWD, the law firm represented Dresser in an attorney-client relationship with respect to this very case. Mr. Raman testified at the disqualification hearing with respect to the involvement of AWD attorneys in the case as counsel representing Dresser during the years Mr. Mosely was an attorney for AWD. The trial court denied the motion to disqualify Mr. Mosely, determining that he had no special knowledge of this particular suit while he worked for AWD and no injury to Dresser or unfair advantage would result by his representation of relators.

The disqualification hearing was held in July 1986. During the discovery period relators made no effort to investigate the origin of Dresser's technical information by way of deposing the inventors, Dresser's in-house patent counsel, Dresser's engineers who examined the Forscan tool, or even Mr. Arlon Groves. Nevertheless, at a hearing eleven months later, one month before trial, Mr. Mosely announced that at trial he planned to offer Mr. Raman's testimony from the disqualification hearing into evidence to show that during the deposition of Mr. Wolk, Mr. Raman had the opportunity to learn relators' trade secrets and to report them to Dresser's in-house patent counsel. The court responded, "I will in all probability deny that unless I've been mandamused to allow him to testify." Relators now request that we grant such a mandamus.

 It would be inappropriate for this court to address the merits of Judge Touchy's statement. There is no order or even docket entry to note this possible, *future* ruling. Mandamus will only issue to correct trial court *actions* and only when there is no adequate remedy by appeal. *Garcia v. Peeples*, 734 S.W.2d 343, 345 (Tex.1987). The trial court has not yet acted. We further note that even if the statement were embodied in a written order, signed by the court, relators would still have an adequate remedy by appeal by way of a bill of exception and mandamus would not issue. Relators fourth request is denied.

Relators petition for writ of mandamus is denied in all respects.