FORD MOTOR COMPANY, Relator,

v.

The Honorable Candace G. TYSON, Judge of the 44th District Court of Dallas County, Texas, Respondent.

No. 05–96–01214–CV.

Court of Appeals of Texas, Dallas.

March 31, 1997.

Rehearing Overruled May 12, 1997.

---

12. Tex. Penal Code Ann. § 20.01(2)(A) (West 1994).

Mike Parham, Joel M. Fineberg, Ted Z. Robertson, Law Offices of Frank L. Branson, P.C., Steven Johnson, Dallas, for respondent.

Before OVARD, MORRIS and HANKINSON, JJ.

## OPINION

MORRIS, Justice.

This is an original proceeding. Ford Motor Company seeks a writ of mandamus compelling the trial court to vacate its order imposing sanctions for discovery abuse pursuant to rule 215(3) of the Texas Rules of Civil Procedure. The pretrial sanctions imposed on Ford include the exclusion of arguably favorable evidence, payment of attorney's fees, and payment of $10,000,000 to the real parties in interest within ten days of the sanction order. Because we conclude Ford has an adequate remedy on appeal to challenge the exclusion of evidence and award of attorney's fees, we deny Ford's request for a writ of mandamus with respect to those sanctions. In contrast, however, we conclude Ford does not have an adequate remedy on appeal to challenge the trial court's order requiring it to pay $10,000,000. Moreover, we conclude the $10,000,000 is an arbitrary fine, which is not authorized by rule 215(3). Accordingly, we grant Ford's request for a writ of mandamus with respect to the imposition of the $10,000,000 fine and direct the trial court to vacate that portion of its sanction order.

### Factual Background

On November 30, 1991, Heather Cohen was driving a Ford Probe automobile on a highway in Weatherford, Texas. Cohen's sister, Andrea Archer, and Cohen's three-year-old daughter were passengers in the car. As Cohen left the highway, she collided with the rear of a truck. Cohen was killed in the accident. Archer and Cohen's daughter were injured.

Both Archer and Cohen were insured by State Farm Mutual Automobile Insurance Company. State Farm recorded a statement by Archer in which she said that, immediately before the accident, Cohen claimed the

Bob E. Shannon, Joseph R. Knight, Baker & Botts, Austin, Claudia Wilson Frost, Baker & Botts, Houston, Robert W. Jordan, Baker & Botts, Peter A. Moir, Dallas, Margaret Niver Mcgann, Dallas, for relator.

Candace G. Tyson, Dallas, pro se.

car's cruise control would not disengage and the brakes did not work. Because of Archer's statement, State Farm hired Garrett Engineering to inspect and test the car's brakes and cruise control system. Garrett provided State Farm with a written report in which it concluded the car's cruise control system would not properly set. Garrett also concluded in the report that the brakes had not failed.

In August 1993, Archer, individually and as administratrix of Heather Cohen's estate, together with her parents, individually and as guardians of Cohen's minor daughter, filed suit against Ford in Harrison County alleging the car's brakes or cruise control system had failed. Shortly thereafter, the Archers [1] and Ford entered into an agreement by which the parties agreed that Ford did not need to answer the Archers' discovery requests and, in return, Ford would not "submit" its own discovery until settlement discussions had first taken place.

Some months later, in February 1994, an investigator working with Ford's counsel contacted State Farm to request a copy of the Garrett report. Ford also initiated a deposition on written questions directed to State Farm asking it to produce its claim file relating to the accident. The deposition notice was served on the Archers but not on State Farm. Several days later, apparently without the Archers' knowledge, State Farm agreed to sell Ford the Garrett report for $500. State Farm sent Ford a copy of the report on March 2, 1994. Also on March 2, the Archers, in response to the deposition notice, filed a motion to quash the deposition relating to the State Farm claim file.

According to Ford's counsel, the parties' agreement suspending discovery expired in March 1994. Thereafter, in May 1994, Ford's counsel served State Farm with the deposition on written questions relating to the claim file previously served only on the Archers. Through this deposition, Ford obtained the claim file. On June 27, the Archers filed a motion for sanctions urging that Ford had improperly obtained the State Farm claim file because of the outstanding motion to quash they had filed on March 2.

The June 27 sanction motion was never heard or ruled on.

A year and a half later, the trial court in Harrison County granted Ford's motion to transfer venue and transferred the case to Dallas County. While the case was being transferred, Ford filed an original petition and application for temporary restraining order in Dallas against the Archers seeking to prevent allegedly destructive testing on the Ford Probe. In its original petition, Ford sought contribution and indemnity from "those Respondents and any other parties as yet undetermined who have contributed to the injuries, if any, suffered by any Respondents." By definition, "those Respondents" included Cohen's parents, who were not involved in the accident, and Cohen's minor daughter. Ford obtained a temporary restraining order from a visiting judge. The Archers' counsel was not present when Ford obtained the temporary restraining order.

In response to Ford's petition, the Archers answered, filed as counterclaims the claims they originally asserted against Ford in Harrison County, and requested sanctions against Ford under rule 13 of the Texas Rules of Civil Procedure. The Archers alleged that Ford's claims for contribution and indemnity against Cohen's daughter and the grandparents were frivolous. The Archers further alleged that Ford violated Dallas Civil District Court Rules by seeking a temporary restraining order through an emergency hearing without first attempting to contact opposing counsel.

In February 1996, a hearing was held on the Archers' motion for rule 13 sanctions in the 44th Judicial District Court of Dallas County, where the case is now pending. No order was signed as a result of the motion. An agreement was signed by the parties, however, "[i]n order to settle only Archer's Motion for Rule 13 sanctions for allegedly improperly obtaining the Temporary Restraining Order and Petition."

The Archers filed another motion for sanctions on March 25, 1996, alleging that Ford had destroyed or altered vital evidence. The

---

1. We refer to the real parties in interest collec-    tively as the "Archers."

Archers further alleged, once again, that Ford improperly obtained the State Farm claim file. Ford filed its own motion for sanctions alleging that it was the Archers who had altered vital evidence.

On three separate days, the trial court heard evidence on the Archers' motion for sanctions. Throughout the hearings the trial judge commented that she was greatly disturbed by the fact that Ford had obtained State Farm's claim file. From the record before us, we perceive the trial court was concerned not only about the way Ford obtained the claim file and the Garrett report but also that the claim file, including the Garrett report, was clothed in some type of privilege inuring to the Archers' benefit. At various times the trial judge stated she was going to send a report to the "grievance committee" about the actions of Ford's counsel. Additionally, at the conclusion of the hearings, the judge suggested that a motion for sanctions be filed against State Farm, which was not, and never has been, a party to the litigation.

The trial court signed an order on August 2, 1996, granting the Archers' motion for sanctions holding that Ford had "abused the discovery process by among other acts: (1) violating a Rule 11 Agreement abating discovery; (2) violating a timely filed Motion to Quash; (3) improperly obtaining an Ex Parte Temporary Restraining Order when Ford Motor Company and its counsel were required to provide notice to the Plaintiffs in compliance with the Texas Rules of Civil Procedure and Dallas County Local Rules; (4) making allegations for contribution and indemnity against the minor passenger and the decedent's parents who were not in the vehicle when the wreck occurred; and (5) purchasing the [Garrett] Report and Obtaining the Plaintiffs' State Farm file through improper means." The trial court ordered that all material contained in State Farm's claim file, including the Garrett report, be excluded from evidence at trial. As monetary sanctions, the court ordered Ford to pay the Archers $25,000 in attorney's fees with an additional $25,000 to be paid in the event Ford appealed the sanctions order or pursued a writ of mandamus. Finally, the court

ordered Ford to pay directly to the Archers $10,000,000 "as reasonable sanctions to punish Ford Motor Company for its wrongful and abusive conduct in this matter and to deter others who would contemplate such similar action." Ford was ordered to pay the $10,000,000 in ten days or be held in contempt of court.

In response to the sanction order, Ford filed a motion asking the trial court to stay payment of the monetary sanctions pending final resolution of the case. Ford argued, among other things, that immediate payment of the $10,000,000 sanction would significantly affect its willingness to continue the litigation. The trial court denied Ford's motion holding that immediate payment of the monetary sanctions would not impair Ford's ability to continue the litigation or impede Ford's access to the court. Ford then filed this original proceeding seeking relief from the sanction order through writ of mandamus. We stayed the trial court's sanction order to consider the issues presented.

### Discussion

■■■ In its petition for writ of mandamus, Ford challenges both the monetary sanctions and the exclusion of the Garrett report. It is well settled in Texas that mandamus is an extraordinary remedy available only in limited circumstances. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992). Where a party has a clear and adequate remedy at law, such as through a normal appeal, mandamus will not lie. *Id.* at 842. It is the burden of the party seeking review of a discovery order by mandamus to demonstrate that the remedy offered by an ordinary appeal is inadequate. *Id.*

■■■ Ford argues it has no adequate remedy on appeal for the exclusion of the Garrett report because the report shows the brakes were operational at the time of the accident and it is "the only accurate and trustworthy assessment of the status of the braking system in the vehicle in this case after the accident." According to Ford, destructive testing of the Ford Probe's brakes now precludes any further examination of the brake system and, thus, makes the Garrett report critical, if not vital, to its defense against the

Archers' claims. In essence, Ford's argument is that the Garrett report proves one of its defenses and its exclusion will severely compromise Ford's ability to present an adequate defense.

Our difficulty with Ford's position is that there is no evidence before us that the Garrett report is the only probative proof available. As such, we are unable to conclude at this time that the trial court's sanction order is tantamount to a "death penalty sanction," which might make it subject to immediate review. *See TransAmerican Natural Gas v. Powell,* 811 S.W.2d 913, 919–20 (Tex.1991). The sanction order does not prevent Ford from presenting any of its defenses, including its theory that the brakes were operational at the time of the accident. Nor does the exclusion of the report preclude Ford from otherwise defending against the Archers' claims on which the Archers bear the burden of proof. The Garrett report is one piece of evidence that arguably supports one of Ford's defensive theories. But from the record before us, we cannot conclude it is the only evidence. Only a full development of the evidence will answer that question. Moreover, the report remains in Ford's possession, and nothing in the sanction order precludes Ford from making an adequate record on appeal. We conclude, therefore, that Ford has an adequate remedy on appeal for the exclusion of the Garrett report. *See Forscan Corp. v. Touchy,* 743 S.W.2d 722, 724 (Tex.App.—Houston [14th Dist.] 1987, orig. proceeding) (mandamus denied where evidence excluded by trial court still available to relators and may be presented for appellate review).

■ Ford also complains about the imposition of attorney's fees. Ford argues that the trial court's order awarding attorney's fees if it seeks a writ of mandamus has no "statutory" basis, and further, is improper because it is not conditioned upon Ford losing on appeal. There is, however, authority for a trial court to award attorney's fees as a sanction. *See* TEX.R.CIV.P. 215. In effect, Ford challenges the extent of that authority, rather than its existence. That question is properly addressed through a normal appeal. *See Street v. Second Court of Appeals,* 715 S.W.2d 638, 639–40 (Tex.1986) (attorney's fees as sanctions may be properly addressed upon final appeal of a case).

Ford's argument that the award of attorney's fees is not conditioned upon the success or failure of its appeal raises a more troublesome issue. Ford contends the trial court's order is a coercive attempt to inhibit proper appellate review. Although we have serious concerns about the nature of the trial court's order in this respect, Ford does not argue in its application for extraordinary relief that it lacks an adequate remedy on appeal for payment of the attorney's fees. And we see no reason why review on appeal is not an adequate remedy in this case to test the propriety of the award. The attorney's fees sanction, therefore, is not subject to mandamus relief.

■ Although the exclusion of the Garrett report and the imposition of attorney's fees may be remedied, if at all, upon final appeal of the case, we conclude the $10,000,-000 sanction is of such a nature that immediate relief is appropriate and necessary. Our conclusion is not based on the amount of the sanction. The amount is immaterial. As is more fully discussed below, we conclude the $10,000,000 sanction is an arbitrary fine [2] not authorized by rule 215(3) of the Texas Rules of Civil Procedure. The trial court, therefore, had no power to enter the order. In Texas, a writ of mandamus will lie to correct an order the trial court had no power to enter. *Zep Mfg. Co. v. Anthony,* 752 S.W.2d 687, 689 (Tex.App.—Houston [1st Dist.] 1988, orig. proceeding). And where, as in this case, the execution of an unauthorized order will result in the immediate, prejudgment transfer of assets from one party to another, we hold mandamus is an appropriate remedy. The party required to make such an immediate, prejudgment transfer has no adequate remedy on appeal to correct the unauthorized divestiture of its ownership rights.

---

**2.** The term "fine" is used to distinguish noncompensatory, nonremedial monetary sanctions. *See TransAmerican v. Powell,* 811 S.W.2d 913, 921 n.

3 (Tex.1991); *Owens–Corning Fiberglas Corp. v. Caldwell,* 807 S.W.2d 413, 415 (Tex.App.—Houston [1st Dist.] 1991, orig. proceeding).

■ To determine whether a sanction is authorized, we must first ascertain under what rule of law the sanction is imposed. When a sanction order refers to a specific rule, either by citing the rule or tracking its language, we are confined to determining whether the sanction imposed is authorized and appropriate under that particular rule. *See Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex.App.—Houston [1st Dist.] 1994, writ denied). Here, the trial court specifically stated in its order that the sanctions imposed are for abuse of the discovery process. Sanctions for abuse of the discovery process are controlled by rule 215(3) of the Texas Rules of Civil Procedure. *See* TEX.R.CIV.P. 215(3). Furthermore, the parties, both in the trial court and in this proceeding, refer to rule 215 as the authority for the sanctions at issue. We examine the $10,000,000 sanction, accordingly, under the guidelines and limitations of rule 215(3). *See Owens–Corning Fiberglas Corp. v. Caldwell*, 807 S.W.2d 413, 415 (Tex. App.—Houston [1st Dist.] 1991, orig. proceeding).

Under rule 215(3), if a trial court finds that a party has abused the discovery process, it may impose "any appropriate sanction authorized by paragraphs (1), (2), (3), (4), (5), and (8) of paragraph 2b of [rule 215]." TEX. R.CIV.P. 215(3). Of the paragraphs specified, only paragraphs (2) and (8) involve monetary sanctions. *See* TEX.R.CIV.P. 215(2)(b). Paragraph (2) authorizes the trial court to impose sanctions in the form of discovery expenses or court costs. *Id.* Paragraph (8) authorizes the trial court to charge the party abusing the discovery process with the reasonable expenses, including attorney's fees, caused by the abuse. *Id.* Both of these sanctions are designed to remedy the abuse by compensating the aggrieved party for expenses incurred in the litigation.

Although we note that the trial court ordered the $10,000,000 to be paid directly to the Archers, nowhere in the record before us is the $10,000,000 connected with any expense, cost, or fee incurred or to be incurred by those parties. The amount involved is not determined by anything in the evidence, but only by the trial judge's predilection to punish the offending party and deter others in the future. Here, the amount could just as easily have been $1,000,000 or $100,000,000. Either of these amounts would accomplish the trial court's stated purpose just as certainly as the $10,000,000 actually imposed. The amount the trial court imposed is not compensatory or remedial in any way. It is simply a fine—an amount imposed to punish, and nothing more. Rule 215(3) does not authorize such a fine. *Clone Component Distribs. v. State*, 819 S.W.2d 593, 597 (Tex. App.—Dallas 1991, no writ) (monetary sanctions available for abuse of discovery are limited to reasonable expenses, including attorney's fees, caused by the abuse); *Owens–Corning*, 807 S.W.2d at 415 (rule 215(3) does not provide for monetary fines).

We recognize that other courts have held that the range of sanctions available under 215(3) is broader than those sanctions specifically enumerated in the rule. In *Braden v. South Main Bank*, the court held that the trial court is not limited to the "laundry list" of specifically authorized sanctions when imposing sanctions under rule 215(3). *Braden v. South Main Bank*, 837 S.W.2d 733, 740 (Tex.App.—Houston [14th Dist.] 1992, writ denied), *cert. denied*, 508 U.S. 908, 113 S.Ct. 2337, 124 L.Ed.2d 248 (1993). In reaching this conclusion, the court ostensibly relied on the Texas Supreme Court opinions in *Trans-American* and *Braden v. Downey*, 811 S.W.2d 922 (Tex.1991). *Braden*, 837 S.W.2d at 740. A close reading of those cases, however, shows that the supreme court neither approved nor authorized the imposition of a monetary fine under rule 215(3).[3]

The debate concerning the types of sanctions that may be imposed under rule 215(3) appears centered on the extent to which rule 215(3) incorporates rule 215(2)(b). Rule 215(2)(b) contains the "laundry list" of sanctions to which rule 215(3) refers. Rule 215(b)(2) also states the trial court may make such orders as are "just" and *among others*

---

**3.** In his concurrence in *TransAmerican*, Justice Gonzalez stated in a footnote that a trial court's authority to assess a monetary fine as a sanction for abuse of the discovery process under rule 215(3) was recognized in *Braden v. Downey*. *TransAmerican*, 811 S.W.2d at 921 n. 3. We are unable to find a clear statement of such authority in *Braden*.

may impose the sanctions listed in paragraphs (1) through (8). Tex.R.Civ.P. 215(2)(b). The language of rule 215(2)(b) clearly permits a trial court to impose sanctions other than those specifically listed in the rule. Rule 215(3) does not contain such language. The language in rule 215(3) is precise and restricts the available sanctions to those specifically described.

In *TransAmerican,* the supreme court held that both rule 215(2)(b) and rule 215(3) leave the choice of sanctions to the sound discretion of the trial court. *TransAmerican,* 811 S.W.2d at 917. This holding does not imply there is no limitation on the type of sanction the court may impose under rule 215(3). Indeed, the sanction at issue in *TransAmerican* was one specifically authorized by paragraph (5) of rule 215(2)(b) (striking of pleadings and entry of default judgment) and, therefore, specifically authorized under rule 215(3). *TransAmerican* simply reveals that a trial court's discretion under rule 215(3) may be freely exercised among the list of sanctions made specifically available under the rule so long as the sanction selected is "just." *Id.*

The supreme court held that, by referring to rule 215(2)(b), rule 215(3) incorporated the requirement that any sanction imposed by the trial court be "just." *Id.* Once again, this holding does not mean the trial court may impose a sanction under rule 215(3) other than the ones specifically listed in the rule. It means that the sanction selected by the trial court from among those listed must be appropriate to the conduct it seeks to redress. *See TransAmerican,* 811 S.W.2d at 916–17 n. 4.

■ In *Braden v. Downey,* the supreme court addressed the issue of a monetary fine. In discussing Braden's contention that the sanctions were unauthorized, the court noted that the trial court did not specify on which part of rule 215 it relied in imposing the sanctions. *Braden,* 811 S.W.2d at 930 n. 7. The court suggested that the sanction order possibly could have been made under rule 215(2)(b). That rule includes the broad language allowing the trial court to make any

order that is just. *Id.* The court ultimately stated, however, that it expressed no opinion regarding the authorization for the sanctions, their basis, or their propriety. *Id.* at 930. We find no holding in *Braden v. Downey* that supports the imposition of a monetary fine under rule 215(3). Based on the clear language of the rule, therefore, we hold that monetary fines are not authorized as a sanction for abuse of the discovery process under rule 215(3).

■ Even assuming the scope of sanctions available under 215(3) is not limited to those specifically listed under the rule, we conclude a monetary fine is impermissible as a sanction for discovery abuse because, by its very nature, it is arbitrary. A fine for discovery abuse is arbitrary because it is unrestrained by law or statute and unrelated to any damages or expenses incurred by the injured party.[4] Arbitrariness is a signal characteristic of a violation of substantive due process. *See Slochower v. Board of Higher Educ.,* 350 U.S. 551, 559, 76 S.Ct. 637, 641–42, 100 L.Ed. 692 (1956); *Ohio Bell Tel. Co. v. Public Utils. Comm'n,* 301 U.S. 292, 302, 57 S.Ct. 724, 729–30, 81 L.Ed. 1093 (1937). This Court has previously recognized that due process limits a court's power to sanction. *Greiner v. Jameson,* 865 S.W.2d 493, 499 (Tex.App.—Dallas 1993, writ denied). If trial courts were allowed to impose fines as sanctions for abuse of the discovery process, the amount of the sanction would be unrestrained by anything other than the trial judge's whim. A transfer of assets from one party to another based on a trial court's whim offends the very foundations of due process and substantive justice.

The due process limitations on a trial court's ability to impose sanctions are made manifest in *TransAmerican.* *See TransAmerican,* 811 S.W.2d at 917. The supreme court set forth two standards in *TransAmerican* that "set the bounds of permissible sanctions under rule 215" and restrain courts from imposing sanctions in an arbitrary and capricious manner. *Id.* A trial court cannot ignore the application of these two standards.

4. *See supra* note 2.

Under *TransAmerican*, the sanction imposed must first bear a direct relationship to the offensive conduct. *Id.* In other words, the sanction must be directed against the abuse and toward remedying the prejudice caused by the conduct. *Id.* Clearly, any fine imposed under 215(3) cannot meet this standard. Because the amount of a fine is arbitrary, determined solely by the trial judge's personal preference, it does not bear a direct relationship to the abusive conduct and is not calculated to remedy any nonmonetary prejudice caused to the opposing party. And, unlike the monetary sanctions specifically provided under rule 215(3), a fine is not calculated to remedy or compensate for monetary damages caused by the abuse.

Second, a sanction must not be excessive and must "fit the crime." *Trans-American*, 811 S.W.2d at 917. When reviewing a sanction under *TransAmerican*, an appellate court must determine whether the trial court abused its discretion by imposing an excessive sanction. This review presupposes the sanction imposed actually serves, as it must, one of the legitimate purposes of discovery sanctions, which are compliance, deterrence, and punishment. *See Bodnow Corp. v. Hondo*, 721 S.W.2d 839, 840 (Tex. 1986). If a sanction does not serve one of these purposes, an appellate court never reaches the issue of excessiveness because the sanction, failing to serve a legitimate purpose, is improper. The inquiry under *TransAmerican*, therefore, is whether the sanction under review is inappropriate, not because it does not serve one of the three legitimate purposes of sanctions, but because it is excessive.

Where an arbitrary fine is concerned, however, there is no way to assess on appeal whether it is excessive or "fits the crime." The amount of the fine is not tied to any evidence in the record; the basis of calculating the amount is unknown. Moreover, in cases with identical facts, the amount of a fine may be greatly different for unknown and unknowable reasons. The amount of the fine may be based only on the extent of the trial judge's displeasure with the offending party's conduct or, perhaps, even for some other reason silent in the record. Given

sufficiently egregious conduct, the trial court will most likely attempt, as in this case, to set the fine in an amount high enough to get the offending party's attention. Such a sanction does not "fit the crime," however, but merely corresponds to the trial court's perception of the offending party's ability to pay. The test to determine whether a sanction is excessive should not be whether a party is able to pay the amount the trial court chooses to impose.

The difficulty in assessing whether a sanction is excessive is revealed in the trial court's decision-making process. When imposing a sanction on a party, a trial court makes two decisions: first, whether to impose a sanction and, second, what sanction to impose. When a trial court decides to impose a sanction, its decision is based not only on the offensive conduct found but also is necessarily based upon its conclusion that a sanction will serve at least one of the legitimate purposes of discovery sanctions. If a sanction will not, a trial court's imposition of the sanction would be improper. A reviewing court usually can evaluate the propriety of the trial court's first decision easily because the offending party's conduct is evident in the record. A reviewing court can confirm the offending party's conduct justifies the trial court's decision to sanction. It can also determine whether a sanction will serve one of the legitimate purposes of discovery sanctions.

In determining whether a sanction is excessive, however, it is the trial court's second decision that is under scrutiny. The reason for the trial court's choice of a particular sanction may not be evident from the record. The reason most often rests undisclosed in the mind of the trial judge. Moreover, when a fine is the sanction chosen, the underlying reason for the amount of the fine cannot be objectively determined. Although, as here, there may be evidence of a party's net worth or ability to pay, an appellate court cannot determine why a trial court chose a particular amount. Other than evaluating whether a party is able to pay the fine imposed, an appellate court can only attempt to assess what effect attends the sanction chosen; that is, whether the amount imposed serves one of the legitimate purposes of sanctions, such as

punishment or deterrence. Yet, the fact that a sufficiently large fine, like the one here, serves the purpose of punishment or deterrence is already subsumed in the trial court's first decision and, moreover, is self-evident. Because of this, a reviewing court must either mindlessly approve the fine because it serves to punish or will deter others, which makes review of the question of excessiveness meaningless, or go through the exercise of examining the fine through its own subjective analysis. If a reviewing court disagrees with the amount of the fine, it would do so because of its own subjective view about the amount imposed, not because of the state of the record. Subjective determinations lack predictability. The absence of predictability undermines the guiding doctrine of *stare decisis* relied upon by both the bench and bar to reach just decisions founded on principles of law. A wavering standard of subjectivity does not serve the judicial process well. Neither does the inability of an appellate court to conduct a meaningful review of a trial court's order.

We have already recognized that punishment and deterrence are among the legitimate purposes of discovery sanctions. *Cf. Chrysler Corp. v. Blackmon,* 841 S.W.2d 844, 849 (Tex.1992). A fine may certainly punish and deter future offensive conduct. The legitimate purposes of punishment and deterrence are not independent, however, of the requirement that the sanction be "just." Merely because a party is effectively punished does not mean the instrument of punishment is a just one. A sanction under rule 215(3) employed to punish must meet the standards imposed by *TransAmerican. Id.* Arbitrary fines do not. Moreover, for the *TransAmerican* standards to be viable, a sanction necessarily must be subject to meaningful review. By their very nature, arbitrary fines are not.

Traditionally, arbitrary sanctions have been viewed as an abuse of discretion. *See Electronic Data Sys. Corp. v. Tyson,* 862 S.W.2d 728, 733 (Tex.App.—Dallas 1993, orig. proceeding); *Hanley v. Hanley,* 813 S.W.2d 511, 521 (Tex.App.—Dallas 1991, no writ). A trial court has no "discretion," however, to determine what the law is or in applying the law to the facts. *Walker,* 827 S.W.2d at 840. Where a sanction does not exist under the law, the trial court has no discretion to impose it. Because a monetary fine is neither directly nor indirectly authorized as a sanction under rule 215(3) and because an arbitrary fine imposed under rule 215(3) does not meet the standards set forth in *TransAmerican,* the trial court had no discretion to impose the fine in this case.

We grant Ford's petition for writ of mandamus to the extent it seeks relief from the $10,000,000 fine and direct Judge Candace G. Tyson to modify her sanction order of August 2, 1996, to delete the fine accordingly. We further direct Judge Tyson to vacate her order of August 2, 1996, to the extent it orders Ford to pay the $10,000,000 fine within ten days of the date she signed the order granting sanctions. In all other respects, Ford's petition for writ of mandamus is denied.